[No. B017679. Second Dist., Div. Two. Sept. 29, 1986.]

ROBERT VINCI et al., Plaintiffs and Respondents, v.
JAMES A. EDMONDS, JR., as Real Estate Commissioner, etc.,
Defendant and Appellant.

**COUNSEL**

John K. Van de Kamp, Attorney General, Edmond B. Mamer and Herbert A. Levin, Deputy Attorneys General, for Defendant and Appellant.

Anderson, Howard, Faust & Rios and Robert H. Faust for Plaintiff and Respondent.

## OPINION

**ROTH, P. J.**—The Real Estate Commissioner of the State of California (Commissioner) appeals from a judgment directing payment of $15,000 to Robert and Margaret Vinci out of the Real Estate Education, Research and Recovery Fund (Bus. & Prof. Code, § 10470 et seq.). We affirm.

The relevant facts and chronology are as follows: In 1979 Eugene Kennedy met the Vincis in the course of selling a home belonging to Margaret Vinci's brother. Kennedy falsely represented to the Vincis that he was a licensed real estate broker and the owner of Dynamic Realty Company. In reality, he was licensed as a real estate salesperson and as such was not authorized to engage in many of the activities of a licensed broker.

Upon learning of the Vincis' interest in investing money, Kennedy told them of the lucrative possibilities involved in short term swing loans secured by trust deeds on real property. The Vincis made inquiries of the Better Business Bureau which informed them that no complaints had been lodged against either Kennedy or "his company." Moreover, the Vincis discussed the matter with real estate brokers who told them that short term swing loans were "normal practice." Eventually, the Vincis transferred $15,000 to Kennedy which he would purportedly use to fund short term swing loans to unnamed clients. The Vincis, however, were uncomfortable about possible foreclosure on the personal residence of the recipient of the loan proceeds in the event of default. Consequently, Kennedy stated that instead of obtaining trust deeds from the loan recipients, he, Kennedy, would execute a promissory note supported by a trust deed on his own realty to act as security for repayment of the loans. The Vincis agreed. Unbeknown to the Vincis, Kennedy no longer owned the property which he offered as security.

Kennedy never did invest the Vincis' money in swing loans and eventually defaulted on the promissory note he had given them. The Vincis filed suit against him for default, fraud, and negligent misrepresentation, and received a judgment in excess of $20,000. After satisfying as much of the judgment as was possible from Kennedy's personal assets, the Vincis filed an application in the superior court for an order directing payment of the remainder out of the Real Estate Education, Research, and Recovery Fund. Shortly before the hearing on that application, the Vincis were informed for the first time that Kennedy had not been a licensed broker; that Kennedy had actually been employed by one Langhofer, who had been a licensed broker; and that Langhofer could not be found. After the hearing, the trial court granted the Vincis' request[1] and from that order Commissioner appeals.

---

[1] The matter was submitted to the trial court on stipulated facts supplemented by testimony from the Vincis and their attorney.

Business and Professions Code section 10470[2] et seq. creates a special fund supported by license fees to compensate individuals who are defrauded by real estate licensees. Section 10471, subdivision (a), provides for recovery from the fund of unpaid judgments against a licensee for actual or constructive fraud and conversion of trust funds "arising directly out of any transaction when the judgment debtor was licensed and performed acts for which a license is required." Recovery is available to those who have been defrauded by either a licensed real estate broker or a licensed real estate salesperson (*Merrifield* v. *Edmonds* (1983) 146 Cal.App.3d 336, 340-341 [194 Cal.Rptr. 104]).

 Kennedy's taking the $15,000 from the Vincis to fund third party short term swing loans secured by real property was conduct[3] only a licensed real estate broker could legally perform.[4] Kennedy, licensed only as a salesperson, was not permitted to engage in such a transaction except when employed by a licensed broker to so act.[5] Hence, on this appeal, the Commissioner's substantive assault on the superior court's order directing payment out of the fund to the Vincis is that recovery under section 10471 is not permitted when the loss arose directly out of a transaction when the judgment debtor, Kennedy, was licensed as a real estate salesperson but improperly and fraudulently[6] performed acts for which a real estate broker's license is required. In other words, Commissioner argues that the predicate to any recovery is that the person must have been licensed to do the specific

---

[2]All subsequent statutory references are to the Business and Professions Code unless noted otherwise.

[3]Commissioner's claim that these events do not even fall within the purview of the statutory scheme regulating the conduct of real estate licensees because the Vincis merely made a *personal* loan to Kennedy is belied by the record. Both Robert and Margaret Vinci testified that their intent was *not* to make a personal loan but instead to invest their money in short term swing loans to third parties. The trial court explicitly found in favor of the Vincis on this point. Commissioner has failed to establish any abuse of discretion in that ruling. (See *Booth* v. *Robinson* (1983) 147 Cal.App.3d 371, 377, 381 [195 Cal.Rptr. 130].)

[4]Section 10131 defines a real estate broker, in relevant part, as ". . . a person who, for a compensation or in expectation of a compensation, does or negotiates to do one or more of the following acts for another or others: . . . (d) Solicits borrowers or lenders for or negotiates loans or collects payments or performs services for borrowers or lenders or note owners in connection with loans secured directly or collaterally by liens on real property . . . . [¶] (e) Sells or offers to sell, buys or offers to buy, or exchanges or offers to exchange a real property sales contract, or a promissory note secured directly or collaterally by a lien on real property . . ., and performs services for the holders thereof."

[5]Section 10132 defines real estate salesperson as one ". . . who, for a compensation or in expectation of a compensation, is employed by a licensed real estate broker to do one or more of the [specified] acts [in which a broker is authorized to engage]."

[6]Commissioner has never controverted the finding that Kennedy's acts were fraudulent. Moreover, assuming the Vincis have a right to recover from the fund, Commissioner does not argue that $15,000 is an inappropriate amount of recovery.

act which defrauded the applicants. We disagree. The judgment debtor at bench was licensed pursuant to the Real Estate Law portion of the Business and Professions Code (§§ 10000-10602) and performed an act embraced in the license required by law.

Commissioner's reliance upon *Merrifield* v. *Edmonds, supra,* 146 Cal.App.3d 336, we believe is clearly distinguishable.

In *Merrifield,* Jones was a licensed salesperson and was always known as such to Merrifield. Merrifield hired Jones to manage Merrifield's apartment building. Such employment was inherently illegal. Only a licensed broker could qualify for such employment. A licensed salesperson is not permitted to so act. While so employed, Jones misappropriated several thousand dollars. Merrifield ultimately obtained a judgment against Jones for that money. After Merrifield secured an order directing satisfaction of that judgment from the fund established by section 10471, Commissioner appealed to the Court of Appeal alleging that the fund did not cover that situation. The appellate court noted that because Jones had not been licensed to perform the acts which caused the loss to Merrifield (managing Merrifield's rental property), the issue was whether or not section 10471 should be interpreted as permitting a recovery when the loss arose out of a transaction when the judgment debtor was licensed as a salesperson but fraudulently performed acts for which a broker's license is required. Based upon the particular facts before it, the appellate court resolved the question in the negative. It reasoned Merrifield did not qualify as an innocent member of the public entitled to compensation under section 10471 because not only had he entered into an illegal contract with Jones, but, he, Merrifield, was subject to criminal penalties for so doing.[7] Hence, the court concluded: "The Legislature cannot in reason have intended on the one hand to impose upon one in [Merrifield's] position a criminal penalty and on the other hand to allow him compensation from the Fund." (*Merrifield* v. *Edmonds, supra,* 146 Cal.App.3d at p. 345.)

The facts at bench are manifestly distinguishable from those in *Merrifield.* Here, Kennedy affirmatively misrepresented his status to the Vincis on many occasions. Moreover, he often met with them at the office of Dynamic Realty Company where he continued to play the role of a licensed real estate broker

---

[7]Section 10138 provides: "It is a misdemeanor, punishable by a fine of not exceeding one hundred dollars ($100) for each offense, for any person, whether obligor, escrowholder or otherwise, to pay or deliver to anyone a compensation for performing any of the acts within the scope of this chapter, who is not known to be or who does not present evidence to such payor that he is a regularly licensed real estate broker at the time such compensation is earned."

and owner of the enterprise. This is qualitatively different from the situation in which Merrifield, a practicing dentist, knew from the outset that Jones was only licensed as a salesperson.

■ Section 10471 is a remedial statute intended to protect the public against loss resulting from misrepresentation and a breach of fiduciary duty by licensed real estate personnel who are unable to respond to damage awards. Consequently, it is to be given a liberal construction to promote its purpose and protect persons within its purview. (*Nordahl* v. *Department of Real Estate* (1975) 48 Cal.App.3d 657, 663 [121 Cal.Rptr. 794].) As such, it has been held that relief will be granted under section 10471 unless to do so is clearly forbidden by statute. (*Ibid.*) "[Section 10471] will be construed when its meaning is doubtful so as to suppress the mischief at which it is directed, to advance or extend the remedy provided, and to bring within the scope of the law every case which comes clearly within its spirit and policy. [Citations.]" (*Booth* v. *Robinson, supra,* 147 Cal.App.3d 371, 378.)

■ The Vincis, unlike Merrifield, are clearly innocent members of the public and thus within the class of individuals for whom the Legislature sought to provide benefits. The fact that Kennedy's real estate salesperson's license did not entitle him to arrange swing loans does not defeat the Vincis right to recover.[8] They were free of any wrongdoing and were deceived by a scheming licensed real estate salesperson who consistently misrepresented his status to them. In fact, Commissioner has never argued that the Vincis' conduct was in any way unreasonable.[9]

The trial court correctly concluded that the Vincis should be able to recover pursuant to the terms of section 10471.[10]

---

[8]Indeed, had it not been for the peculiar facts in that case, the *Merrifield* court conceded that not only would it have come to the conclusion that in order to recover from the fund, it is merely necessary that the fraudulent licensee be licensed under *any* provision of the act and engage in a transaction for which any license is required under the act, but that to do so conclude would have been consistent with the general rules of statutory construction. (*Merrifield* v. *Edmonds, supra,* 146 Cal.App.3d at pp. 344-345.)

[9]In this regard, the superior court made the following findings of fact in the fraud action the Vincis had successfully prosecuted against Kennedy.

"1. [The Vincis] were justified in relying on [Kennedy's] representations because: a. Kennedy had superior knowledge of the subject matter of said representations. b. The existence of a confidential and/or fiduciary relationship between [the Vincis] and [Kennedy]. c. Reliance was consistent with normal prudence and reasonableness under the circumstances."

[10]Commissioner also contends that because Kennedy was not licensed to negotiate swing loans, the Vincis' right to recover was dependent on their first seeking relief against Kennedy's employer, Jacob Langhofer, who as a licensed broker would have been authorized to arrange funding of such transactions. We need not discuss this claim as we have concluded that Kennedy's status as a salesperson, as opposed to a broker, does not defeat the Vincis' claim.

The judgment is affirmed.

Compton, J., and Gates, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 18, 1986.