[No. B028301. Second Dist., Div. Six. Feb. 2, 1988.]

DENNIS DIERENFIELD, Plaintiff and Respondent, v.
JOSEPH M. STABILE et al., Defendants;
JAMES A. EDMONDS, JR., as Real Estate Commissioner, etc., Real
Party in Interest and Appellant.

**COUNSEL**

John K. Van de Kamp, Attorney General, Edmond B. Mamer and Marla K. Markman, Deputy Attorneys General, for Real Party in Interest and Appellant.

Raymond S. Courtney and Reetz & Fox for Plaintiff and Respondent.

**OPINION**

**ABBE, J.**—Appellant, Real Estate Commissioner of the State of California (Commissioner) appeals from a judgment in favor of respondent Dennis Dierenfield (Dierenfield) directing payment in the amount of $20,000 from

the Recovery Account of the Real Estate Fund. The judgment was made pursuant to Business and Professions Code section 10471.[1] We reverse.

## FACTS

Joseph M. Stabile (Stabile) was a real estate salesperson licensed under section 10132. A salesperson may act in a professional capacity only during his employment by and on behalf of a licensed real estate broker.

Between late August and October 19, 1981, Stabile was employed in a mortgage brokerage business owned by Donald Lee Obrecht, a licensed broker. During this period Dierenfield invested through Stabile in two loans secured by real property. Both loans were repaid without incident.

On October 19, 1981, Stabile's employment with Obrecht ended. He did not disclose to Dierenfield that he was no longer employed by a real estate broker.

In late November 1981, while Stabile was not employed by any licensed broker, he arranged for Dierenfield to make two loans secured by real property in the total principal amount of $75,000 to W. H. and Beulah Cannon (the Cannons). The loans bore interest at a rate in excess of 30 percent per annum.

Because article XV, section 1 of the California Constitution provides that restrictions on interest rates shall not apply to loans secured by real property made or arranged by a licensed real estate broker, the loans would not have been usurious under California law if Stabile were employed by and acting on behalf of a licensed broker at the time the loans were made. However, because Stabile was not so employed the loans were usurious.

The Cannons made payments on the loans until January of 1983. By that time Dierenfield had received at least $11,250 in interest payments.

In April of 1983 the Cannons filed a complaint for usury against Dierenfield, Stabile and others. In January of 1985 the matter was settled when the Cannons agreed to pay the entire balance of the principal owing to Dierenfield. Dierenfield received this payment on April 18, 1985.

In March of 1985 Dierenfield filed a complaint for damages for fraud against Stabile. In February of 1986 Dierenfield obtained a judgment against Stabile by default. The judgment included a finding that Stabile had

---

[1] All further statutory references are to this code unless otherwise specified.

an obligation to disclose that he was not employed by a licensed broker at the time the loans were made.

Having obtained the judgment against Stabile, Dierenfield applied to the Recovery Account of the Real Estate Fund under section 10471. After a hearing, the court found that both loans to the Cannons comprised a single transaction, and the fund was ordered to pay $20,000, the maximum amount for a single transaction, to Dierenfield.

This amount was awarded on the theory that Dierenfield was entitled to the benefit of his bargain; that is, the difference between the interest actually received and the interest agreed to be paid.

## DISCUSSION

At the time of Dierenfield's application, section 10471 provided in pertinent part: "(a) [w]hen any aggrieved person obtains a final judgment in any court of competent jurisdiction against any person or persons licensed under this part, under grounds of fraud, . . . arising directly out of any transaction when the judgment debtor was licensed and performed acts for which a license is required under this part, and which cause of action occurred on or after July 1, 1964, the aggrieved person may, upon the judgment becoming final, file a verified application in the court in which the judgment was entered for an order directing payment out of the Recovery Account of the amount of actual and direct loss in the transaction up to the sum of ten thousand dollars ($10,000) of the amount unpaid upon the judgment . . . . [¶] (b) Notwithstanding subdivision (a), the liability of the Recovery Account for which the cause of action occurred on or after January 1, 1980, shall not exceed twenty thousand dollar ($20,000) per transaction, for any transaction which is a basis for the judgment or judgments, regardless of the number of persons aggrieved or the number of parcels of real estate involved, or the number of licensees who participated in the transaction."

## I.

The Commissioner points out that a real estate salesperson is only licensed to act during his employment by and on behalf of a licensed real estate broker. (Citing *People* v. *Asuncion* (1984) 152 Cal.App.3d 422, 425 [199 Cal.Rptr. 514]; § 10131.) Because Stabile was not employed by a broker at the time the loans in question were made, the Commissioner argues that Stabile was not licensed within the meaning of section 10471, subdivision (a).

We disagree. A similar argument was unsuccessfully raised by the Commissioner in *Vinci* v. *Edmonds* (1986) 185 Cal.App.3d 1251 [230 Cal.Rptr. 308]. There a licensed real estate salesperson affirmatively misrepresented that he was a broker. He took $15,000 from the applicants to fund loans secured by real property, an act only a licensed broker could legally perform. The Commissioner argued that the applicants should not recover because section 10471 requires the licensee to be licensed to do the specific act which defrauded the applicants. The court rejected that argument stating that the statute must be given liberal construction, and relief must be granted "unless to do so is clearly forbidden by statute." (*Id.,* at p. 1256.)

The Commissioner seeks to distinguish *Vinci* on the basis that in the instant case no affirmative misrepresentations as to the licensee's status were made. It was undisputed, however, that in the instant case Stabile had a duty to disclose he was no longer employed by a broker. We find *Vinci* not to be distinguishable. In both cases the real estate licensees failed in their duty to disclose their true status.

The Commissioner's reliance on *Merrifield* v. *Edmonds* (1983) 146 Cal.App.3d 336 [194 Cal.Rptr. 104] is misplaced. In *Merrifield,* as here, the applicant hired a salesperson to perform acts for which a broker's license is required. The distinguishing feature between *Merrifield* and the case at bar is that in *Merrifield* there was no evidence that the applicant was misled as to the salesperson's status. Thus the applicant in *Merrifield* was not an innocent member of the public, and was properly denied recovery under a statute designed to protect such innocent persons. (See *Vinci* v. *Edmonds, supra,* 185 Cal.App.3d at pp. 1255-1256 where the court drew a distinction between the facts of that case and the facts in *Merrifield.*)

In the instant case Stabile fraudulently concealed his status from Dierenfield. Thus, like the applicants in *Vinci,* Dierenfield qualified as an innocent member of the public whom the statute is designed to protect.

■ Nor do we find merit in the Commissioner's argument that Stabile's license terminated when he was no longer employed by a broker. Although former section 10161 required a salesperson to return his license to the Commissioner when he left his broker's employ, this is no longer a requirement under section 10161.8. Even if, as the Commissioner contends, this change in the law was made solely to save the administrative expense attendant to canceling and reissuing a license, the fact remains that under current law the salesperson's license is not terminated while the salesperson is unemployed, even though such a salesperson is no longer authorized to perform acts under the real estate law.

■ Finally the Commissioner argues that an amendment to section 10471, subdivision (a) indicates the Legislature intended that in order to

recover from the fund the licensee must be licensed to take part in the particular transaction out of which the fraud arose; that is, the transaction in question must have been within the scope of the licensee's license.

Former section 10471, subdivision (a) required that in order to recover from the fund the fraud must have arisen out of acts for which "a license is required." That subdivision was amended in 1985 to require the licensee to be licensed and to have performed acts for which "that license is required." The amendment, however, was not effective until January 1, 1987.

Here the application was made prior to January 1, 1987, and therefore this action is governed under the former code section which merely required that a licensee have "a" license. There is nothing to indicate that, as the Commissioner contends, the amendment did not change substantive law, but only clarified existing law.

## II.

■ The Commissioner contends the trial court erred when it determined that the measure of recovery from the fund is equal to the loss of the benefit of Dierenfield's bargain.

Section 10471, subdivision (a) allows payment out of the Recovery Account of the amount of "actual and direct loss" up to $20,000. The question is whether the amount of "actual and direct loss" includes the benefit of the bargain. We hold it does not.

Section 10471 must not be so liberally construed so as to defeat the intent of the Legislature.

"An examination of the statute . . . indicates that the fund is financed (§ 10470) by fees exacted from licensed brokers and salesmen. Recovery from the fund is limited to circumstances where the defrauding licensee has no assets from which to satisfy the judgment (§ 10472 [after Jan. 1, 1987, § 10471, subd. (c)(7)(D) and (E)]), and recovery is limited in the amount payable to any one judgment creditor (§ 10471 [after Jan. 1, 1987, § 10474]), and with respect to the amount allocable for the liability of any one licensee (§ 10474). From the foregoing it appears that the Legislature intended minimum and limited rather than maximum benefits to those

otherwise qualifying." (*Wolff* v. *Hoaglund* (1970) 11 Cal.App.3d 227, 234 [89 Cal.Rptr. 778].)

Viewed as a whole we find that the statutory scheme is not intended to ensure that applicants recover profits, rather the intent is to prevent applicants from suffering losses on money actually paid. Therefore we hold that the applicant should be placed in the same position in which he or she would have been if the transaction had never occurred.

In *Nordahl* v. *Department of Real Estate* (1975) 48 Cal.App.3d 657, 664 [121 Cal.Rptr. 794], the court stated that the applicant should be placed in the same position she would have been in had the fraud not occurred.

In the case at bar if the fraud had not occurred and Stabile had stated his true status, either Dierenfield would not have entered into the transaction, in which case he could not have anticipated making a profit, or Dierenfield could have entered into the transaction through a licensed broker, in which case the loan would not have been usurious and he could have anticipated receiving the benefits of his bargain.[2] Thus recovery based on the premise of the fraud never having occurred can lead to speculation and questionable results.

By stating the rule on the basis of the transaction, rather than the fraud, never having occurred, speculation is reduced and the intent of the Legislature to grant a limited benefit is satisfied by allowing the applicant to recover his out-of-pocket losses.

Under this rule the applicant's recovery from the fund is limited to the amount of the principal actually paid out plus interest at the statutory rate from the date the principal is paid out until the date it is returned. The interest accrues at the legal rate (*Nordahl* v. *Department of Real Estate, supra,* 48 Cal.App.3d at p. 666), and, because no other rate is specified by statute, that rate is 7 percent. (See *Green* v. *Future Two* (1986) 179 Cal.App.3d 738, 744 [225 Cal.Rptr. 3].)

In the instant case, because Dierenfield received the return of his principal plus interest in the amount of $11,250, these amounts must be credited against any recovery from the fund.

---

[2] Neither party argues that Dierenfield would have entered into the transaction knowing the loan was usurious.

The judgment is reversed and the matter is remanded to the trial court for reconsideration of the amount of the award. Each party to bear their own costs on appeal.

Stone, P. J., and Gilbert, J., concurred.

On February 23, 1988, the opinion was modified to read as printed above.