767 So.2d 505 (2000)
Barry I. HECHTMAN and Brenda Hechtman, Appellants,
v.
NATIONS TITLE INSURANCE OF NEW YORK, INC. and Commonwealth Land Title Insurance Company, Appellees.
No. 3D99-1597.
District Court of Appeal of Florida, Third District.
June 7, 2000.
Opinion on Denial of Rehearing September 20, 2000.
Aballi, Milne, Kalil & Garrigo, P.A., and Hendrik G. Milne, Miami, and Anthony V. Falzon, Coral Gables, for appellants.
Cohen, Norris, Scherer, Weinberger & Wolmer and James S. Telepman (North Palm Beach); Keith Mack, LLP, and Robert A. Cohen, Cape Coral, and Jack R. Reiter, Miami, for appellees.
Before SCHWARTZ, C.J., and GREEN and FLETCHER, JJ.
GREEN, J.
The appellants, Barry and Brenda Hechtman, appeal the entry of final summary judgment in favor of two title insurers, the appellees, Nations Title Insurance of New York ("Nations Title") and Commonwealth Land Title Insurance Company ("Commonwealth"), on the Hechtmans' statutory claims filed pursuant to section 627.792, Florida Statutes (1997). The lower court concluded that these title insurers were not liable to the Hechtmans under section 627.792 for a defalcation committed by a licensed Florida attorney because the attorney was not a licensed title agent as prescribed by this statute. We agree and affirm for the reasons outlined herein.
*506 Section 627.792 imposes liability upon title insurers for defalcation by its licensed title insurance agents. Specifically, the statute provides as follows:
A title insurer is liable for the defalcation, conversion, or misappropriation by a licensed title insurance agent of funds held in trust by the agent pursuant to § 626.8473. If the agent is licensed by two or more insurers, any liability shall be borne by the title insurer upon which a title insurance binder, commitment, policy, or title guarantee was issued prior to the illegal act. If no binder, commitment, policy or guarantee was issued, each title insurer represented by the agent at the time of the illegal act shares in the liability in the same proportion that the premium remitted to it by the agent during the 1-year period before the illegal act bears to the total premium remitted to all title insurers by the agent during the same time period. (Emphasis added).
Attorneys, however, who serve as title insurance agents and are duly admitted to practice law within this state and are in good standing with the Florida Bar have been statutorily exempted from the title insurance licensing requirements by the Florida legislature. See § 626.8417(4)(a), Fla. Stat. (1997).
The undisputed record evidence discloses that Jorge E. Hernandez was an attorney licensed to practice law in the state of Florida from the date of his admission on September 23, 1992 until the date of his resignation on May 12, 1997. Until he resigned from the bar, Hernandez remained a member in good standing. As such, neither he nor his law firm, The Law Office of Jorge E. Hernandez, P.A., were licensed title insurance agents by the Department of Insurance.
The Hechtmans were two of several private mortgage lenders who filed various claims against the appellee title insurers on or about March and April 1997 for losses allegedly sustained when Hernandez defalcated funds held in his firm's trust account.[1] One such claim was filed pursuant to section 627.792. On October 15, 1997, Commonwealth filed its amended complaint for declaratory relief seeking a determination that it had no statutory liability for Hernandez's actions pursuant to section 627.792 because Hernandez was not a licensed title insurance agent regulated by the Department of Insurance, but instead was a licensed attorney regulated by the Florida Bar. Thereafter, Commonwealth moved for partial summary judgment on this statutory claim. Nations Title likewise filed its amended motion for partial summary judgment seeking similar relief. The trial court granted these motions finding that in order for liability to attach against a title insurance underwriter under section 627.792, for defalcations, conversions, or misappropriations committed by one of its title agents, that agent must be licensed by the Florida Department of Insurance in accordance with chapter 626, Florida Statutes (1997). Since Hernandez was never licensed as a title insurance agent by the Department of Insurance, the court concluded that no statutory liability could attach to the appellees.
On this appeal, the Hechtmans argue that section 627.792 must be construed to impose liability against title insurers for the thefts of all of their duly appointed agents, regardless of whether such agents were subject to the licensure requirement under Chapter 626.[2] The reason that they *507 focus solely on the licensure requirement by the Department of Insurance as the standard for liability under this statute leads to the unreasonable result of a principal escaping statutory liability for the actions of its attorney agents who are exempt from the licensure requirements, even though the principal appointed such agents and profited from their activities. They further assert that a purchaser who obtains a title insurance policy through an attorney title agent or a corporation involved in the active practice of law would have no statutory redress for the defalcations of its attorney title agent, despite having paid the same premium as a purchaser who chooses to use a non-attorney title insurance agent.
Although we certainly understand and share the appellants' concerns about the wisdom of a legislative enactment which allows title insurers to escape statutory liability for the misdeeds of its duly appointed attorney agents, we nevertheless are constrained to give effect to the plain and ordinary meaning of the words utilized in section 627.792. See Metropolitan Dade County v. State Dept. of Envtl. Prot., 714 So.2d 512, 516 (Fla. 3d DCA 1998); Christo v. State Dept. of Bank. and Fin., 649 So.2d 318, 320 (Fla. 1st DCA 1995). The plain and ordinary meaning of section 627.792 is that title insurers are only liable under its provisions for the defalcation, conversion or misappropriation of their title insurance agents who are duly licensed by the Department of Insurance. The fact that attorney agents have been expressly exempted from the licensure requirement (and hence regulation by the Department of Insurance) evinces a clear legislative intent that title insurers are not to be held liable for attorney agents' thefts under this statute. Where, as here, the language of a statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for us to depart from its plain and unambiguous language. Dade County v. Pena, 664 So.2d 959, 960 (Fla.1995); see also Holly v. Auld, 450 So.2d 217, 219 ("[w]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.") (quoting A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 1144, 137 So. 157, 159 (1931)).
We thus are not at liberty to broaden the plain language of section 627.792 to impose statutory liability against title insurers for the thefts of their attorney agents as urged by the appellants. Even in the absence of this statutory remedy, we note that the appellants and other similarly situated victims may still seek legal redress through common law remedies against the title insurers and/or the attorneys themselves as well as with the Florida Bar. If any such avenues are insufficient, as suggested by the appellants on this appeal, we conclude that the appellants' remedy properly lies with the legislature rather than with the courts. See Kagan v. Blue Ocean Villas, Inc., 118 So.2d 64, 65 (Fla. 3d DCA 1960).
Affirmed.
FLETCHER, J., concurs.
SCHWARTZ, Chief Judge, dissents.
SCHWARTZ, Chief Judge (dissenting).
In my view, the court has violated the most basic principle of statutory construction: that the law should be interpreted in accordance with the intent of the legislature by vindicating an obvious purpose of the statute in question to remedy a particular harm. 48A Fla.Jur.2d Statutes §§ 113, 153-55 (2000). I cannot agree that the statutory scheme, which was designed to protect bilked title insurance customers, *508 can properly be read to eliminate a large number, perhaps a majority, of those persons simply because they have dealt with company agents who, if anything, should be regarded as more trustworthy than others because they are members of the Florida Bar. It is all the more incongruous to suppose that the legislature meant to, and did, achieve this result by the entirely offhanded method of providing (a) that the statute applies only to a "licensed title insurance agent," see § 627.792, Fla. Stat. (1997), and (b) in another section dealing with a quite different matter, that attorneys are exempt from obtaining a specific license to act as such agents. § 626.8417(4)(a), Fla. Stat. (1997).
As in Schneer v. Allstate Indemnity Co., 767 So.2d 485 (Fla. 3d DCA 2000), the same majority professes itself regretfully bound by the letter of the law to reach what it seems to recognize is an unjust result. See Schneer, 767 So.2d at 487 n. 1 (Schwartz, C.J., dissenting in part). In fact, I believe it is a victim of a self-imposed hardship created by unjustifiably inserting the words "only" and "as" into a statute in which they do not appear so that the words "licensed title insurance agent" turn out to mean "only one licensed as a title insurance agent."
I would instead effect the legislative intent by reading section 627.792 as written, that is, as non-exclusive, thus applying to all transactions which fall within its general ambit. Putting it somewhat differently, the word licensed should be construed to apply to everyone who is authorized by law to act as a "licensed title insurance agent" including the person who is "licensed" as a lawyer. That the statute should be so interpreted is supported by State ex rel. Talley v. McAvoy, 14 Ariz.App. 229, 231, 482 P.2d 478, 480 (1971). McAvoy concerned the entitlement to relief from a legislatively created real estate recovery fund under a statute which stated it applied to those aggrieved by an act of a "duly licensed real estate broker." The court held, as I would here, that the statute, read in the light of its policy of protecting consumers, applied to a transaction in which the owner sold real estate contracts on its own account and was not therefore required to be licensed under the real estate brokerage law. Similarly, in Dierenfield v. Stabile, 198 Cal.App.3d 126, 243 Cal.Rptr. 598 (1988), the court dealt with a statutory proceeding against a real estate recovery account which applied "when any aggrieved person obtains a final judgment ... against any person licensed under this part." Dierenfield, 198 Cal. App.3d at 128, 243 Cal.Rptr. at 600. The court held:
The Commissioner points out that a real estate salesperson is only licensed to act during his employment by and on behalf of a licensed real estate broker. (Citing People v. Asuncion (1984) 152 Cal.App.3d 422, 425, 199 Cal.Rptr. 514; § 10131.) Because Stabile was not employed by a broker at the time the loans in question were made, the Commissioner argues that Stabile was not licensed within the meaning of section 10471 subdivision (a).

We disagree. A similar argument was unsuccessfully raised by the Commissioner in Vinci v. Edmonds (1986) 185 Cal.App.3d 1251, 230 Cal.Rptr. 308. There a licensed real estate salesperson affirmatively misrepresented that he was a broker. He took $15,000 from the applicants to fund loans secured by real property, an act only a licensed broker could legally perform. The Commissioner argued that the applicants should not recover because section 10471 requires the licensee to be licensed to do the specific act which defrauded the applicants. The court rejected that argument stating that the statute must be given liberal construction, and relief must be granted "unless to do so is clearly forbidden by the statute." (Id., at p. 1256, 230 Cal.Rptr. 308.) [e.s.]
Dierenfield, 198 Cal.App.3d at 128, 243 Cal.Rptr. at 600; see also Real Estate *509 Dep't v. Griswold, 8 Ariz.App. 361, 446 P.2d 467 (1968); Graue v. Missouri Property Ins. Placement Facility, 847 S.W.2d 779 (Mo.1993); State v. Fouquette, 67 Nev. 505, 519-520, 221 P.2d 404, 420-21 (1950)("The words `licensed physician or surgeon', found in this section, were clearly intended to apply to a person not prohibited by the statute `regulating the practice of medicine, surgery and obstetrics in the State of Nevada', Secs. 4090-4107, N.C.L. from practicing, because it is only such a person who can legally `prescribe or act for the patient.'"[e.s.] ), cert. denied, 341 U.S. 932, 71 S.Ct. 799, 95 L.Ed. 1361 (1951), 342 U.S. 928, 72 S.Ct. 369, 96 L.Ed. 691 (1952).
Very recently, the Second District made just the point that I have so far, so clumsily attempted to establish: that, like all legal expressions, see Grip Dev., Inc. v. Coldwell Banker Residential Real Estate, Inc., ___ So.2d ___, ___, 2000 WL 1345153 (Fla. 4th DCA Case nos. 4D99-1513 & 4D99-3509, opinion filed, Sept. 20, 2000)(Farmer, J., dissenting), when the context so dictates, "license" and "licensed" may mean something other than their dictionary definition. Carroll v. State, 761 So.2d 417 (Fla.2000), held that the defendant was properly convicted of "[d]riving a motor vehicle while his ... license is suspended or revoked," § 322.264(1)(d), Fla. Stat. (1997), even though he had never been, in fact, issued a driver's license. The court reached this result by finding from other statutory provisions that the legislature really meant to punish a person whose "driving privileges" had been legally revoked. See § 322.721(1)(b), Fla. Stat. (1997). Similarly, perhaps identically, the term "licensed title insurance agent" must mean to include every person who is legally privileged to act as one.
By enacting section 627.792, the legislature sought to provide a remedy for just the losses which occurred in this case. It is wrong that its salutary intent has been frustrated by a super-technical interpretation of what should be regarded as an inconsequential choice of words.

ON MOTION FOR REHEARING
PER CURIAM.
Although appellants' motion for rehearing is denied, we certify to the Supreme Court of Florida that the decision herein passes upon the following question of great public importance:
Whether § 627.792, Fla.Stat. (1997), which provides that an insurer is liable for the misfeasance of a "licensed title insurance agent" applies to a title insurance agent who is an attorney and is therefore exempt from licensing as a title insurance agent by the Department of Insurance under § 626.8417, Fla.Stat. (1997).
NOTES
[1] These thefts prompted Hernandez's resignation from the Florida Bar.
[2] Alternatively, the Hechtmans argue on this appeal that assuming arguendo that the trial court's ruling was correct as to Hernandez, it was nevertheless wrong as to his professional service corporation. They assert that pursuant to section 626.8417(4)(c), Florida Statutes, attorney-owned corporations must be licensed by the Department of Insurance unless they are engaged in the active practice of law and there was no evidence adduced that Hernandez's professional service corporation had ever been engaged in the active practice of law. Thus, they maintain that summary judgment was improvidently entered in this case. Because we note from the record that this argument was never advanced to the trial court, we decline to entertain it for the first time on appeal.