# Third District Court of Appeal
## State of Florida

Opinion filed December 22, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-1732
Lower Tribunal No. 20-14970
_____

**Lennar Homes, LLC, etc.,**
Appellant,

vs.

**Martinique at the Oasis Neighborhood Association, Inc., etc.,**
Appellee.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Barbara Areces, Judge.

Gordon & Rees Scully Mansukhani, and David M. Gersten, Richard P. Freud (Portland, OR) and Ryan M. Wolis; Watt Tieder Hoffar & Fitzgerald, LLP, and Mariela M. Malfeld, for appellant.

Morgan & Morgan, P.A., and Roger C. Brown (West Palm Beach), for appellee.

Before EMAS, LOGUE and SCALES, JJ.

EMAS, J.

**INTRODUCTION**

Lennar Homes, LLC (Lennar), the developer and defendant below, appeals from the trial court's order denying its motion to dismiss and to compel arbitration of the claims filed by Martinique at the Oasis Neighborhood Association, Inc. (the Association). The Association sued Lennar on behalf of its members for alleged construction defects to the front exterior of the individually owned homes. See § 720.303(1), Fla. Stat. (2020); see also Fla. R. Civ. P. 1.221.[1] Lennar, in response, sought to enforce the arbitration provision in the members' individual purchase and sale agreements and special warranty deeds; however, the trial court denied Lennar's motion finding, among other things, that arbitration was not required because "[t]here is no agreement between [The Association] and [Lennar] that requires arbitration."

We reverse and hold that, consistent with our sister court's decision on this issue, the Association's right to sue in its representative capacity requires it "to comply with the arbitration agreements signed by each of its members," Pulte Home Corp. v. Vermillion Homeowners Ass'n, Inc., 109 So. 3d 233, 235 (Fla. 2d DCA 2013). Because the arbitration provision's

---

[1] The statute and rule each provide that a condominium association can bring a cause of action "in its name on behalf of all [association] members concerning matters of common interest to the members."

plain language requires arbitration of the alleged construction defects, the trial court erred in denying Lennar's motion to dismiss and to compel arbitration.[2]

**FACTS AND BACKGROUND**

Lennar developed Martinique at Oasis, a residential community located in Homestead, consisting of twenty-six "townhouse style" buildings, subdivided into 241 individual units. Between 2013 and 2016, Lennar sold the units that would comprise Martinique. Prior to closing on each unit, Lennar and Martinique purchasers executed a purchase and sale agreement containing an arbitration provision:

> The parties to this Agreement specifically agree that this transaction involves interstate commerce and

---

[2] We decline to reach the additional claim, raised by Lennar, that the individual homeowners, rather than the Association, are the proper parties to this dispute; the record is not adequately developed, nor is the Association's standing to bring its cause of action under section 720.303(1) and rule 1.221 directly before us on appeal from this nonfinal order. See Fla. R. App. P. 9.130(a)(3)(C)(iv) (authorizing appeal of nonfinal orders that "determine. . . the entitlement of a party to arbitration"); Morton & Oxley, Ltd. v. Charles S. Eby, M.D., P.A., 916 So. 2d 820, 821 (Fla. 2d DCA 2005) ("The denial of a motion to dismiss a complaint is a nonfinal order, and *the denial of a motion to dismiss* for failure to name indispensable parties or *for lack of standing is not listed as an appealable nonfinal order in rule 9.130(a)*.") (emphasis added). See also Caribbean Transp., Inc. v. Acevedo, 698 So. 2d 604, 605 (Fla. 3d DCA 1997); Fla. Ins. Guar. v. Still, 154 So. 3d 422 (Fla. 5th DCA 2014). Our holding is limited to a determination, consistent with Pulte Home Corp. v. Vermillion Homeowners Ass'n, Inc., 109 So. 3d 233, 235 (Fla. 2d DCA 2013), that the trial court erred in denying Lennar's motion to compel arbitration of the dispute.

that any Dispute (as hereinafter defined) shall first be submitted to mediation and, *if not settled during mediation, shall thereafter be submitted to binding arbitration as provided by the Federal Arbitration Act (9 U.S.C. §§1 et seq.) and not by or in a court of law or equity. 'Disputes' (whether contract, warranty, tort, statutory or otherwise), shall include, but are not limited to, any and all controversies, disputes or claims* (1) arising under, or related to, this Agreement, the Property, the Community or any dealings between Buyer and Seller; (2) arising by virtue of any representations, promises or warranties alleged to have been made by Seller or Seller's representative; (3) *relating to personal injury or property damage alleged to have been sustained by Buyer, Buyer's children or other occupants of the Property, or in the Community*; or (4) issues of formation valididty [sic] or enforceability of this section. […]

(Emphasis added). A special warranty deed was recorded upon each home sale and included a virtually identical arbitration provision.[3]

---

[3] The special warranty deed provides:

*'Disputes' (whether contract, warranty, tort, statutory or otherwise) shall include, but are not limited to, any and all controversies, disputes or claims* (1) arising under, or related to, this Deed, the underlying purchase agreement for the sale and conveyance of the Property, the Property, the community in which the Property is located, or any dealings between Grantee and Grantor; (2) arising by virtue of any representations, promises or warranties alleged to have been made by Granter or Grantor's representative; (3) *relating to personal injury or property damage alleged to have been sustained by Grantee, Grantee's children or other occupants of the*

In 2018, the Association "became aware of potential latent construction defects . . . in the exterior wall cladding system of the buildings" when it noticed discolorations in the paint on the exterior stucco. Following an investigation, the Association sued Lennar in a complaint (and thereafter an amended complaint) alleging, inter alia, construction defects to "the stucco, stone cladding, and foam moldings/decorative shapes on the exterior of the buildings." The defects, the Association contended, "do not relate to any areas or damages within any individual unit owner's home and, instead, relate only to *exterior common areas as defined by the Declaration*." (Emphasis added).

Lennar moved to dismiss the complaint and compel arbitration. It asserted that the Association, acting in its representative capacity, improperly filed suit because individual homeowners—through the purchase and sale agreement and the special warranty deed—agreed to arbitrate their disputes.

Following a hearing, the trial court denied the motion, finding: "[t]here is no agreement between [the Association] and [Lennar] that requires arbitration;" "[t]he Amended Complaint only alleges defects in the common

*Property, or in the community in which the Property is located*; or (4) issues of formation, validity or enforceability of this Section.

elements, which [the Association] has an obligation to maintain;" "[the Association] has an easement over the property, including individual homes, as necessary to fulfill its maintenance obligations;" and "[t]he arbitration provision that [Lennar] is attempting to enforce, even if it had been included in an agreement to which [the Association] was a party, would be rendered null and void as against public policy pursuant to section 720.3075(1)(b), Florida Statutes, because it would have the effect of prohibiting or restricting [the Association's] right to maintain a lawsuit against [Lennar], the developer."

This appeal followed.

## ANALYSIS AND DISCUSSION

Relying on Pulte, 109 So. 3d at 235, Lennar contends that, because the Association is suing in its representative capacity, on behalf of its members, and because those members each signed a purchase and sale agreement by which they agreed to arbitrate their disputes with Lennar, the Association is likewise bound by that provision to arbitrate the instant dispute with Lennar. We agree.

Florida law provides that homeowner associations may maintain lawsuits on behalf of their members against the developer "concerning matters of common interest to the members," e.g., "the common areas,"

6

"structural components of a building," or "other improvements for which the association is responsible." § 720.303(1). <u>See also</u> Fla. R. Civ. P. 1.221 (providing that a homeowners association, "after control of such association is obtained by homeowners or unit owners other than the developer, may institute . . . actions . . . in its name on behalf of all association members concerning matters of common interest to the members, including, but not limited to: [] the common property, area, or elements . . . structural components of a building or other improvements . . . for which the association is responsible").[4] "The sole requirement for the bundling of a class is that the members of the association have a common interest regarding the common elements of the property." <u>Homeowner's Ass'n of Overlook, Inc. v. Seabrooke Homeowners' Ass'n, Inc.</u>, 62 So. 3d 667, 670 (Fla. 2d DCA 2011). This appeal involves whether—and the extent to

---

[4] Conversely, the Florida Supreme Court has held that—notwithstanding a condominium association's statutory right "to sue for damages to common elements of the condominium"—"a unit owner can maintain an action against the developer or general contractor for alleged breaches of duties owed in common to all the unit owners with respect to construction defects in the common areas or common elements" as long as "the interests of the other unit owners are represented in the action," i.e., intervention by an indispensable party under Florida Rule of Civil Procedure 1.210(a). <u>Rogers & Ford Const. Corp. v. Carlandia Corp.</u>, 626 So. 2d 1350, 1355 (Fla. 1993) (noting: "Any person may at any time be made a party if that person's presence is necessary or proper to a complete determination of the cause.")

which—an association suing in this representative capacity is bound by an arbitration agreement between its members and the developer.

In analyzing this issue, we find instructive our sibling court's analysis in Pulte, 109 So. 3d at 235, wherein the builder appealed an order denying its motion to compel arbitration of the condominium association's claims, which alleged "certain construction defects" to the property. Id. at 234. The Second District reversed, explaining that the complaint was "carefully crafted" in its description of the alleged defects and therefore it was "impossible to know what defects [were] at issue." Id. at 234-35. Importantly, the court noted:

> From the transcripts in the record, it appears likely that the primary issues relate to the exterior of the homes and to the roofs. If there are problems with the roads or the drainage ponds, for example, that cannot be ascertained from the complaint. . . . **[W]hen the Association brings an action for damage to a roof or the exterior of a home that is individually owned by a member, we are unconvinced that its rights are superior to those of the actual owner.**

Id. at 235 (emphasis added). The Second District further explained:

> We reverse the order to the extent that the Association is suing as a representative of the homeowners, all of whom agreed to arbitrate their claims. In so ruling, *we leave open the possibility that the Association could amend its complaint to allege a more limited claim involving property owned by the Association*. Although the claims of the homeowners must be arbitrated, *it is possible that a claim concerning property owned by the Association would not require arbitration*.

8

Id. at 234 (emphasis added). See also Oakmont Custom Homes, LLC v. Billings, 310 So. 3d 59, 60 (Fla. 4th DCA 2021) (describing the holding in Pulte: "The Second District explained that the homeowners association was required to arbitrate even though it did not sign a purchase agreement or limited warranty because it was suing in its representative capacity.")

The Pulte court also rejected a similar argument advanced by the Association in the instant case: that because the association "did not sign a purchase agreement or a limited warranty" with the builder, it was "free to litigate its claims and should not be compelled to arbitrate them."[5] Pulte, 109 So. 3d at 235. In rejecting this argument, the Second District explained that the association's right to sue in its representative capacity under rule 1.221 comes with "an obligation to comply with the arbitration agreements signed by each of its members." Id. Similarly, the Association here cannot avoid the arbitration agreement signed by its members. If the Association's

---

[5] The Association's argument pertaining to whether the purchase and sale agreement was incorporated into any contracts between Lennar and the Association is also unavailing. See GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC, 140 S. Ct. 1637, 1643-44 (2020) (noting: "arbitration agreements may be enforced by nonsignatories through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel'"). While it is correct insofar as there does not exist a contract between the Association and Lennar incorporating the purchase and sale agreements between the individual owners and Lennar, such is not required under these circumstances nor did Lennar ever make this argument below or on appeal.

9

members agreed to arbitrate disputes relating to the construction defects, the Association is likewise bound.

Despite its contention otherwise, it is clear the Association is not suing Lennar in its "own right." The alleged construction defects in "the stucco, stone cladding, and foam moldings/decorative shapes" are located in the front entryways of the homes that comprise each individual homeowner's property. The Association has not taken the position that it is suing "concerning property owned by the Association." Pulte, 109 So. 3d at 234. Even if the Association has an obligation to maintain some aspect or portion of that property, and can therefore bring suit in its representative capacity under rule 1.221, it is nevertheless the homeowners who are the real parties in interest. Id. at 235 (citing Yacht Club Se., Inc. v. Sunset Harbour N. Condo. Ass'n, 843 So. 2d 917, 919 (Fla. 3d DCA 2003)).

Consistent with our sister court's analysis in Pulte, we hold that the Association's right to proceed in its representative capacity in this case requires it to abide by the members' agreement with Lennar to arbitrate this dispute.[6]

---

[6] The final question—whether this constitutes a "dispute" within the scope of the applicable arbitration provision—is easily answered here. The allegations of the Association's complaint clearly involve a "dispute" as defined by the purchase and sale agreement (and by similar language in the special warranty deed, discussed *supra*), which requires (should mediation

10

Because we hold that the arbitration provision is enforceable against the Association, we must also address that portion of the trial court's order which held the arbitration provision is "rendered null and void as against public policy pursuant to section 720.3075(1)(b), Florida Statutes, because it would have the effect of prohibiting or restricting [the Association's] right to maintain a lawsuit against [Lennar], the developer." Section 720.3075(1)(b) provides in relevant part:

> (1) It is declared that the public policy of this state prohibits the inclusion or enforcement of certain types of clauses **in homeowners' association documents**, including declaration of covenants, articles of incorporation, bylaws, **or any other document of the association** which binds members of the association, which either have the effect of or provide that:
>
> ***
>
> (b) A homeowners' association is prohibited or restricted from filing a lawsuit against the developer, or the homeowners' association is otherwise effectively prohibited or restricted from bringing a lawsuit against the developer.

---

not fully resolve the dispute) arbitration of "any and all controversies, disputes or claims. . . arising under, or related to, this Agreement, the Property, [or] the Community. . .; [or] relating to. . . property damage alleged to have been sustained by Buyer, Buyer's children or other occupants of the Property, or in the Community." See City of Miami v. Fraternal Order of Police Lodge #20, 248 So. 3d 273, 275 (Fla. 3d DCA 2018) ("A trial court's role in determining arbitrability under the Revised Florida Arbitration Code is limited to the following inquiries: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived.") (quotation omitted).

(Emphasis added.)

By its express terms, this statute applies only to "homeowners' association documents." The arbitration provision at issue is contained in the purchase and sale agreement and the special warranty deed, which are not "declaration[s] of covenants, articles of incorporation, bylaws, or any other document of the association." It is well-established: "When the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." Holly v. Auld, 450 So. 2d 217, 219 (Fla. 1984) (quoting A.R. Douglass, Inc. v. McRainey, 127 So. 157, 159 (1931)). See also Hechtman v. Nations Title Ins. of New York, Inc., 767 So. 2d 505, 507 (Fla. 3d DCA 2000) (holding: "Where, as here, the language of a statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for us to depart from its plain and unambiguous language.") As our Supreme Court recognized in Holly, 450 So. 2d at 219, "it is not the court's duty or prerogative to modify or shade clearly expressed legislative intent in order to uphold a policy favored by the court."

We reverse the order on appeal and remand for further proceedings consistent with this opinion.