[Civ. No. 54634. First Dist., Div. One. May 16, 1984.]

WILLIAM F. ACEBO, Cross-complainant and Respondent, v.
REAL ESTATE EDUCATION, RESEARCH AND RECOVERY FUND,
Cross-defendant and Appellant.

COUNSEL

John K. Van de Kamp, Attorney General, and Calvin J. Abe, Deputy Attorney General, for Cross-defendant and Appellant.

David L. Hodghead for Cross-complainant and Respondent.

OPINION

ELKINGTON, J.—The instant appeal concerns the interpretation of Business and Professions Code section 10471 relating to the Real Estate Education, Research and Recovery Fund (the Fund), under which persons victimized by the fraud of licensed real estate brokers or salesmen may, under certain circumstances, recover their loss from the Fund, which is created by payments from such licensees generally.

The Fund appeals from a judgment in favor of William F. Acebo for $10,000 based upon the fraudulent dereliction of a licensed real estate sales-

man. Acebo has filed no appellate brief, and otherwise had not appeared on the appeal. We choose *not* to treat Acebo's nonappearance as in the nature of a default and to summarily reverse the judgment. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 439, pp. 4403-4404.) Instead, we consider the merits of the appeal.

Acebo had cross-complained against the salesman licensee for damages for fraud in his capacity as a real estate salesman. Judgment was entered for "cross-complainant William F. Acebo and against cross-defendant . . . in the sum of seven thousand five hundred dollars ($7,500.00), together with attorney's fees which the court fixes in the amount of two thousand five hundred dollars ($2,500.00)."

Thereafter, in the same action, Acebo made application to the Fund for payment of the amount of his judgment. In the ensuing trial upon that application, uncontroverted evidence revealed that Acebo, as a result of the fraud "was out thirty-seven fifty" dollars, and in addition "two thousand dollars in attorney's fees."

Judgment was thereafter entered: "That appellant William F. Acebo shall be entitled to payment from the Real Estate Education, Research and Recovery Fund of the State Department of Real Estate of the State of California, and said Department shall pay to applicant the sum of ten thousand dollars ($10,000.00), together with interest thereon a seven percent (7%) per annum from and after the date of the judgment herein."

The instant appeal was taken by the Fund from that judgment.

Business and Professions Code section 10471, as here relevant, provides: "(a) When any aggrieved person obtains a final judgment in any court of competent jurisdiction against any person . . . licensed under this part, under grounds of fraud, . . . arising directly out of any transaction when the judgment debtor was licensed and performed acts for which a license is required under this part, . . . the aggrieved person may, upon the judgment becoming final, file a verified application in the court in which the judgment was entered for an order directing payment out of . . . the Real Estate Fund . . . the amount of actual and direct loss in the transaction up to the sum of ten thousand dollars ($10,000) of the amount unpaid upon the judgment, . . ."

It reasonably bears emphasis that the statute authorizes payment of a judgment "*arising directly out of*" the subject transaction, and for *no more* than "*the amount of actual and direct loss in the transaction.*"

■   The Fund contends that the sum of "thirty-seven fifty" dollars ($3,750) was the "actual and direct loss" of Acebo in the transaction, and that the superior court erred in awarding more.

We find ourselves in agreement.

■   It is first observed that Business and Professions Code section 10471, when enacted in 1963, provided for payment to the aggrieved person of the *"amount of actual damages"* up to $10,000. "Actual damages" might reasonably have embraced such items as punitive damages and attorney fees. Then in 1968 the statute was amended to call for payment "of the *amount of actual and direct loss in the transaction.*"

Such a change in the language of a statute has been repeatedly held to show a deliberate legislative intent to change its meaning. (*Ruiz* v. *Industrial Acc. Com.* (1955) 45 Cal.2d 409, 413 [289 P.2d 229]; *Estate of Simpson* (1954) 43 Cal.2d 594, 600 [275 P.2d 467, 47 A.L.R.2d 991]; *Sacramento Typographical Union No. 46* v. *State of California* (1971) 18 Cal.App.3d 634, 638 [96 Cal.Rptr. 194]; *Wallace* v. *Department of Motor Vehicles* (1970) 12 Cal.App.3d 356, 361 [90 Cal.Rptr. 657]; *Farmers Ins. Exch.* v. *Geyer* (1967) 247 Cal.App.2d 625, 634 [55 Cal.Rptr. 861].)

Here the change in the statute, from "actual damages" to "actual and direct loss in the [fraudulent] transaction," manifestly shows a legislative intent to so narrow its coverage.

And we note judicial interpretations of the amended statute, as providing, "a fund for limited reimbursement of parties defrauded by licensed real estate brokers or salesmen" (*Shirai* v. *Karpe* (1976) 57 Cal.App.3d 276, 278 [127 Cal.Rptr. 549]), a legislatively "intended minimum rather than maximum benefits" (*Wolff* v. *Hoaglund* (1970) 11 Cal.App.3d 227, 234 [89 Cal.Rptr. 778]), and that, had the Legislature intended more "it could simply have called for payment of the judgment rather than payment of 'actual and direct loss'" (*Circle Oaks Sales Co.* v. *Smith* (1971) 16 Cal.App.3d 682, 684 [94 Cal.Rptr. 232].)

We have, of course, considered the cases of *Antonio* v. *Hempel* (1977) 71 Cal.App.3d 128, 130 [139 Cal.Rptr. 309], and *Nordahl* v. *Department of Real Estate* (1975) 48 Cal.App.3d 657, 663 [121 Cal.Rptr. 794], respectively holding that section 10471 treats a judgment's "interest," and "interest and costs," as "actual and direct loss in the transaction." Such contentions are not here made; Acebo concedes he "was out thirty-seven fifty" dollars, i.e., his "actual and direct loss in the transaction." The remaining issue, unlike *Antonio* and *Nordahl,* is whether attorney fees of Acebo's

subsequent action were such a "direct and actual loss in the transaction." As we have pointed out, obviously they were not. The holdings of those cases are thus not applicable here. To the extent that they otherwise tend to impugn the conclusions we have reached they are found contrary to the greater weight of the authority we rely upon, and to be *dicta*.

We accordingly hold that Business and Professions Code section 10471 permits recovery for "actual and direct loss in the transaction up to the sum of ten thousand dollars," and *not* recovery for punitive damages or such indirect damages as attorney fees incurred thereafter, as was apparently contended by Acebo in the superior court.

Since the Fund makes no contention that Acebo is unentitled to interest and costs in respect of the judgment from which its appeal was taken, we do not disturb that award.

The judgment is reversed. The superior court will enter judgment for Acebo against the Fund for $3,750 with interest thereon from September 5, 1979, and for his costs. The parties will stand their respective costs of the appeal.

Racanelli, P. J., and Holmdahl, J., concurred.