[No. H004200. Sixth Dist. Apr. 20, 1989.]

HAROLD TEMPLE et al., Plaintiffs and Respondents, v.
DAVID S. KERWIN, Defendant and Respondent;
JAMES A. EDMONDS, JR., as Real Estate Commissioner, etc., Real
Party in Interest and Appellant.

**COUNSEL**

John K. Van de Kamp, Attorney General, Timothy G. Laddish and Richard F. Finn, Deputy Attorneys General, for Appellant and Real Party in Interest.

Duane W. Shewaga and Adleson, Hess, Christensen & Kelly for Plaintiffs and Respondents.

No appearance for Defendant and Respondent.

**OPINION**

**CAPACCIOLI, J.**—The Real Estate Commissioner appeals from an order directing him to pay $20,000 to Harold and Alta Temple from the Real Estate Recovery Account. (Bus. & Prof. Code, § 10470 et seq.)[1] The only issue is the amount unpaid on the Temples' judgment against David S. Kerwin, a real estate licensee ". . . which represents an actual and direct loss to the [Temples] in the transaction." (§ 10471, subd. (a).) We reverse with directions.

---

[1] All further statutory references are to the Business and Professions Code unless otherwise specified.

On April 9, 1987, following a court trial, the Temples obtained a superior court judgment against Kerwin for intentional fraud committed as a real estate licensee during 1980. The Temples had alleged that Kerwin and other real estate licensees, not named as defendants, had fraudulently induced them to invest $18,000 in a note secured by a deed of trust on property which was already fully encumbered. The Temples made claims against the other real estate licensees and the assignors of the deed of trust and note in federal bankruptcy court. They obtained settlements in a total amount of $15,000.

Interest on the note, which was dated October 31, 1980, was to be paid from November 12, 1980, at 30 percent per annum. The Temples received the first interest-only payment of $5,400 before the property was foreclosed by a senior encumbrance.

The superior court awarded the Temples $18,000 as general damages plus $28,893.70 in interest,[2] $100,000 as damages for emotional distress, $100,000 as punitive damages, attorney's fees of $2,150.75, and costs of $607.70 against Kerwin. The Temples were able to collect only $412 of the judgment.

The Temples submitted an application to the Department of Real Estate for payment of $20,000, the statutory maximum, from the Real Estate Recovery Account.[3] (§ 10471.) The Real Estate Commissioner (Commissioner) denied their application by decision dated November 16, 1987. The Temples filed an application in the superior court for an order directing payment from the Recovery Account. (§ 10472.) The Commissioner opposed the application on the ground that the Temples were entitled to less than the statutory maximum. The trial court granted the Temples' application.

On appeal, the Commissioner again maintains that the Temples are entitled to less than the statutory maximum. He argues that the interest recoverable on the $18,000 investment should have been computed at the prejudgment rate of 7 percent per annum from November 12, 1980, until judgment and at the postjudgment rate of 10 percent per annum (see Cal. Const., art. XV, § 1; Code Civ. Proc., § 685.010) rather than the note rate. He asserts that the interest-only payment of $5,400 should be credited toward principal and interest as of November 11, 1981, the date he says the Temples received it.[4] The Commissioner also asserts that the settlement

---

[2] According to the Temples, that amount represents 30 percent interest per annum on the principal from November 12, 1981, to approximately April 1, 1987.

[3] For causes of action which occurred on or after January 1, 1980, the liability of the Recovery Account is limited to $20,000 for any one transaction. (§ 10474, subd. (c).)

[4] The Temples do not dispute the date.

payments, less costs, should be credited toward principal and interest as of April 30, 1986, the date he says the Temples received them.[5] The Commissioner further contends that $412 recovered from a bank account of Kerwin's should be credited toward interest as of October 7, 1987, the date of levy.[6] According to the Commissioner's calculations, the Temples are entitled to recover only $8,941.

The Temples' position is that they are entitled to payment of $20,000 from the account because their "actual and direct loss" exceeds that amount. They assert that the settlements were reached before the judgment against Kerwin and the judgment took those settlements into account. They also claim that the settlement payments were applied toward their attorney's fees and costs incurred in the bankruptcy proceedings. For both reasons, they argue that the settlements should not reduce the amount recoverable. They further contend, that if the settlements are to be credited, they should be applied proportionately to reduce each item of recovery. They do not dispute that they are not entitled to recover interest calculated based upon the note rate. Finally, the Temples argue that emotional distress damages are "an actual and direct loss" recoverable from the account and, therefore, their unpaid actual and direct loss exceeded $20,000.

The California Legislature has provided that a claimant against the Recovery Account may seek to recover, within specified limitations, ". . . the amount unpaid on the judgment which represents an actual and direct loss to the claimant in the transaction." (§ 10471, subd. (a).)[7] The claimant must provide information showing that he ". . . has diligently pursued collection efforts against other judgment debtors and all other persons liable to the claimant in the transaction that is the basis for the underlying judgment." (§ 10471, subd. (c).) There are statutory maximums of recovery for any one

---

[5] In a supplemental declaration submitted in support of Temples' application to the superior court, their attorney stated that the Temples incurred $17,914.43 in attorney's fees and $4,002.68 in costs to achieve the settlements and that the total fees and costs exceeded the settlements obtained. The Commissioner does not contest those costs or dispute that they are part of the "actual and direct loss" suffered by the Temples. The Temples do not dispute the date the settlement payments were received.

[6] The Temples do not dispute the date of levy.

[7] At the time the Temples submitted their application for payment to the Department of Real Estate, section 10471, subdivision (a), provided in full: "When an aggrieved person obtains a final judgment in a court of competent jurisdiction against a defendant based upon the defendant's fraud, misrepresentation, deceit, or conversion of trust funds arising directly out of any transaction in which the defendant, while licensed under this part, performed acts for which that license was required, the aggrieved person may, upon the judgment becoming final, file an application with the Department of Real Estate for payment from the Recovery Account, within the limitations specified in Section 10474, of the amount unpaid on the judgment which represents an actual and direct loss to the claimant in the transaction." (Stats. 1985, ch. 690, § 3, p. 2293, operative Jan. 1. 1987.)

transaction and any one licensee. (§ 10474.) The program is intended to compensate ". . . individuals who have suffered *economic* losses by the actions of real estate licensees who are unable to respond to judgments, thereby providing greater confidence for the public in dealing with real estate brokers and salespersons licensed by the State of California." (Stats. 1987, ch. 535, § 1, No. 3 Deering's Adv. Legis. Service, p. 1541, italics added; see *Antonio* v. *Hempel* (1977) 71 Cal.App.3d 128, 130 [139 Cal.Rptr. 309]; *Nordahl* v. *Department of Real Estate* (1975) 48 Cal.App.3d 657, 663-664 [121 Cal.Rptr. 794].)

In view of its provisions and purpose, courts have recognized that the recovery program was intended to provide minimum and limited benefits. (See *Dierenfield* v. *Stabile* (1988) 198 Cal.App.3d 126, 132-133 [243 Cal.Rptr. 598]; *Acebo* v. *Real Estate Education etc. Fund* (1984) 155 Cal.App.3d 907, 910 [202 Cal.Rptr. 518]; *Froid* v. *Fox* (1982) 132 Cal.App.3d 832, 836 [183 Cal.Rptr. 461]; *Fox* v. *Prime Ventures LTD.* (1978) 86 Cal.App.3d 333 [150 Cal.Rptr. 202]; *Shirai* v. *Karpe* (1976) 57 Cal.App.3d 276, 279 [127 Cal.Rptr. 549]; *Nordahl* v. *Department of Real Estate, supra,* 48 Cal.App.3d 657, 661; *Wolff* v. *Hoaglund* (1970) 11 Cal.App.3d 227, 234 [89 Cal.Rptr. 778].) Although courts have concluded that "actual and direct loss" does include allowable costs and statutory interest (*Nordahl* v. *Department of Real Estate, supra,* 48 Cal.App.3d 657, 660-667; *Antonio* v. *Hempel, supra,* 71 Cal.App.3d at p. 131), they have determined that "actual and direct loss" does not include treble damages (*Circle Oaks Sales Co.* v. *Smith* (1971) 16 Cal.App.3d 682, 683-685 [94 Cal.Rptr. 232]), punitive damages (*Acebo* v. *Real Estate Education etc. Fund, supra,* 155 Cal.App.3d 907, 910-911), attorney's fee awards (*ibid.*), or attorney's fees incurred in the defense of a foreclosure proceeding by third persons (*Lewis* v. *Edmonds* (1987) 190 Cal.App.3d 1101, 1104 [235 Cal.Rptr. 835]). More recently, a court has found that the measure of recovery from the account is not equal to the loss of the benefit of the bargain but rather it is equal to the out-of-pocket economic loss. (*Dierenfield* v. *Stabile, supra,* 198 Cal.App.3d at pp. 132-134.)

■ We agree with the Commissioner that the Temples are not entitled to recover interest based on the note rate, which represents a measure of damages based on the loss of the benefit of the bargain. We reject the Temples' assertion that they are entitled to recover emotional distress damages, which represent a noneconomic loss. The Temples' remaining arguments fail to focus on the language of the statute: the "actual and direct loss . . . in the transaction."

The transaction must be considered factually as a whole since a claimant is required to pursue collection efforts against all persons liable to him in the

transaction, not merely against the judgment debtors. Thus, here, the actual and direct loss includes the initial investment plus statutory prejudgment and postjudgment interest from the date of the investment, less money obtained[8] credited as of the date of its receipt first to interest and then to principal, and allowable costs. The Commissioner has used the correct approach to measure that loss. However, it appears from our record that the correct date of investment is the note date, October 31, 1980, and the Temples are entitled to prejudgment interest from that time.

We believe our conclusion is consistent with the purpose of the Real Estate Recovery Program and the Legislature's concerns regarding the program's solvency. The Legislature has declared: "In recent years the Real Estate Recovery Program has been subject to claims which have exceeded the intended purpose of the program . . .," "[a]n independent study completed for the Department of Real Estate has determined that, based upon anticipated future program revenues and claims, the Real Estate Recovery Program is now insolvent," and "[t]he economic vitality of the Real Estate Recovery Program must be protected in order for the program to continue to perform valuable consumer protection functions." (Stats. 1987, ch. 535, § 1, No. 3 Deering's Adv. Legis. Service, p. 1541.)

The judgment is reversed with directions to recalculate, consistent with this opinion, the amount unpaid on the underlying judgment which represents an actual and direct loss to the Temples in the transaction and to order that amount to be paid from the Real Estate Recovery Account.

Brauer, Acting P. J., and Premo, J., concurred.

---

[8] That money includes the $5,400 interest-only payment, the $15,000 in settlement payments, and the $412 recovery on the judgment.

[No. H005368. Sixth Dist. Apr. 20, 1989.]

INDUSTRIAL INDEMNITY COMPANY, Petitioner, v.
THE SUPERIOR COURT OF SANTA CRUZ COUNTY,
Respondent;
GEORGE W. BOOTH et al., Real Parties in Interest.

COUNSEL

Kent J. Clancy, Caryn Bortnick and Derby, Cook, Quinby & Tweedt for Petitioner.

No appearance for Respondent.

Charles B. Perkins, Flynn & Rose and Benjamin H. Scharf for Real Parties in Interest.

OPINION

**PREMO, J.**—This is a timely petition for a writ of mandate pursuant to Code of Civil Procedure section 437c, subdivision (*l* ). We grant a peremptory writ in the first instance, holding that there are no damages available to a private litigant under Business and Professions Code section 17203, and that there is no private action under Insurance Code section 790.03, subdivision (h).[1]

---

## FACTS

ultimately recovered in actions brought by such insureds, when such insureds have made claims for amounts reasonably similar to the amounts ultimately recovered. [¶ [ ] (13) Failing to provide promptly a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or applicable law, for the denial of a claim or for the offer of a compromise settlement."