Filed 3/26/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| GUINNANE CONSTRUCTION CO., INC, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> STEPHEN MARC CHESS, et al., <br><br> Defendants and Respondents. | A172999 <br><br> (Alameda County Super. Ct. No. RG18932289) |

Defendants Edmund Jin, his real estate agent Stephen Marc Chess and Chess's firm (collectively, defendants), intentionally interfered with a contract between Guinnane Construction Co., Inc. (Guinnane) and the Petersons, which forced Guinnane to file a specific performance action against the Petersons. After prevailing in that action, Guinnane brought a separate lawsuit against defendants under the tort of another doctrine, seeking to recover the attorney fees it had incurred in the specific performance litigation. The trial court awarded those fees.

Guinnane then sought an additional award, this time for the attorney fees it incurred in prosecuting the tort of another action itself. The trial court denied that request.

Guinnane now appeals, contending that recovery of the fees it incurred suing defendants is necessary to make it whole for the injury it suffered because of their torts. Guinnane also analogizes its claim to "fees on fees"

1

awards permitted under the private attorney general statute and other fee-shifting statutes.

In resolving this appeal, we examine the scope and limits of attorney-fee recovery under the tort of another doctrine and the role of that doctrine in the context of the general "American Rule" limiting recovery of attorney fees in two-party disputes. Prior decisions have applied the doctrine and stated or alluded to its boundaries. While square holdings are hard to come by, the cases that address the issue all point in the same direction. Based on a careful reading of the case law and other authorities, we conclude such fees are not recoverable.

## BACKGROUND

### I.

### *The Specific Performance Action*

The underlying action for specific performance, *Guinnane Construction Co., Inc. v. Peterson et al.* (Super. Ct. Alameda County, No. RGI 7-861212)), arose from a real estate transaction involving an approximately 80-acre parcel of land in Livermore, California (the Property).

At the time relevant to the transaction, Cliff and Barbara DeLima, a married couple, owned a 50 percent undivided interest in the Property[1] and resided there. Roy Guinnane, the principal of Guinnane Construction Co., Inc. (Guinnane), was a close friend of the DeLimas. The remaining 50 percent interest was owned by Russ Peterson, Janet Peterson, and Christie Hibner (collectively, the Petersons).

In 2016, defendants explored the possibility of acquiring the Property for purposes of developing a polo field. Jin wanted to purchase the entire

---

[1] The DeLimas' interest was held by their marital trust. For ease of reference, we refer to it as the DeLimas' interest.

2

property. Chess contacted Russ Peterson and Clifford DeLima and learned that the DeLimas had their primary residence on the Property and did not want to sell their interest. Chess and Jin changed plans and contemplated purchasing the Petersons' interest in the Property and then seeking a partition to force the DeLimas to sell their undivided interest. Defendants had made an offer to purchase the whole property for $3 million but, after it became clear the DeLimas would not sell their interest, offered to purchase the Petersons' interest for $1.2 million.

Defendants were aware the Property was subject to a tenants-in-common agreement (the TIC Agreement) containing a right of first refusal in favor of the DeLimas, which required the Petersons to offer their interest to the DeLimas before selling to a third party. Jin, through Chess, made an offer to purchase the Peterson interest that was expressly subject to that right of first refusal.

In April 2017, the DeLimas exercised their right of first refusal and assigned their contractual rights to purchase the Peterson interest to Guinnane. Thereafter, defendants continued communicating with the Petersons regarding a potential sale to Jin. Ultimately, in July 2017, the Petersons sold their interest to Jin for $1.5 million. As a condition of the sale, the Petersons required Jin to agree to indemnify them against claims relating to their interest, including the already pending action Guinnane had filed. Jin designated his brother-in-law, Yong Lu, as the purchaser.

In the meanwhile, in May 2017, Guinnane had filed a complaint for specific performance against the Petersons after its efforts to exercise the right of first refusal and complete the purchase of the Petersons' interest were unsuccessful. The case was fully litigated for over a year, culminating in a bench trial. The Petersons contended that no valid contract was created

3

by the DeLimas' exercise of their right of first refusal, and if there was a contract it was unenforceable under the statute of frauds. The trial court rejected these defenses and in August 2018 entered judgment in favor of Guinnane granting specific performance against the Petersons and requiring Lu to convey the Peterson interest to Guinnane in exchange for $1.2 million.

## II.

### *The "Tort of Another" Action*

On December 14, 2018, Guinnane filed the present action against defendants Jin, Chess and Chess Connect. The complaint alleged four causes of action: (1) inducing breach of contract; (2) intentional interference with contractual relations; (3) intentional interference with prospective economic advantage; and (4) negligent interference with prospective economic advantage. Guinnane sought, among other relief, to recover the attorney fees it had incurred in the specific performance action.

Defendants filed a motion to strike Guinnane's allegations seeking recovery of attorney fees. The trial court denied the motion. In April 2019, the defendants filed a special motion to strike pursuant to the anti-SLAPP statute. The trial court denied that motion as well, the defendants appealed the ruling and this court affirmed. (*Guinnane Construction Co. v. Chess* (Dec. 22, 2020, A157781) [nonpub. opn.].)

Before and after the SLAPP appeal, the parties engaged in written discovery, including requests for production, interrogatories, and requests for admission. In January 2022, Guinnane moved for summary judgment, which the trial court denied. Also in 2022, the parties completed depositions of the named parties, exchanged expert disclosures, produced expert materials, and conducted four expert depositions. Trial was initially scheduled for

4

May 2022, and the parties submitted motions in limine, exhibit lists, and proposed jury instructions.

Before trial, Guinnane notified defendants it intended to seek recovery not only of the attorney fees it had incurred in the contract action against the Petersons but also those it was incurring to prosecute the current tort action against defendants. The defendants filed a motion in limine seeking to exclude evidence of the fees incurred in this action. Judge Eumi Lee granted the motion in limine.

After multiple continuances and pretrial conferences, the case was reassigned to Judge Somnath Raj Chatterjee, who presided over the case through trial. Jury was waived, and a five-day bench trial was conducted, followed by posttrial briefing.

In August 2024, Judge Chatterjee issued a 57-page final statement of decision, finding in favor of Guinnane on its first and second causes of action for inducing breach of contract and interference with contractual relations. The court entered judgment in favor of Guinnane and against defendants on the first and second causes of action and awarded $1,798,994 in compensatory damages consisting of the attorney fees Guinnane incurred in prosecuting the specific performance action and prejudgment interest. The judgment further provided that Guinnane, as the prevailing party, could recover costs and could file a motion seeking any attorney fees incurred in this case to the extent permitted by law. The court thereafter awarded Guinnane $23,948 in costs.

Guinnane incurred $841,133.78 in attorney fees in prosecuting the tort of another action against defendants. In October 2024, it filed a postjudgment motion seeking to recover those fees. Guinnane argued the tort of another doctrine permits recovery of attorney fees incurred both in the

5

underlying litigation against the third party that was necessitated by defendants' tortious conduct and in the litigation with defendants to recover those fees. The defendants opposed the motion. Judge Victoria Kolakowski heard the fee motion and denied it, concluding Guinnane did not carry its initial burden of persuasion or provide legal authority holding fees on fees can be recovered under the tort of another doctrine. Judge Kolakowski also noted that Judge Lee had rejected Guinnane's argument in granting defendants' motion in limine to exclude evidence of the fees Guinnane incurred in the current action.

Guinnane timely appealed.

## DISCUSSION

### I.

### *The Trial Court Correctly Held That, As a Matter of Law, Guinnane Is Not Entitled To Recover Attorney Fees Incurred in Its Action Against the Tortfeasor To Recover Fees Incurred As Damages.*

Guinnane asks us to reverse the trial court's order denying its motion for attorney fees and remand for the trial court to determine the reasonable amount of fees it incurred in this litigation. Guinnane contends that denying attorney fees in this case would dilute or dissipate the compensation awarded to it in the underlying action, preventing it from being made whole. It further argues that fees incurred in litigating fee entitlement should be recoverable under the tort of another doctrine by analogy to the private attorney general doctrine.

Whether the tort of another doctrine permits recovery of attorney fees incurred in actions to recover from the tortfeasor is an issue of law, which we review de novo. After carefully reviewing the parties' briefs and relevant authorities, we conclude that attorney fees incurred in an action against the

6

tortfeasor to recover fees awarded under the underlying tort of another doctrine do not fall within any recognized exception to the general rule that each party must bear their own legal fees. Guinnane has cited no authority holding that the tort of another doctrine permits recovery not only of fees incurred in prosecuting or defending an action against a third party, but also of fees incurred in an action against the tortfeasor itself, and our own research has yielded none. On the other hand, several cases have declined to include fees incurred in tort of another litigation to recover from the tortfeasor. In addition, under the American Rule, codified in Code of Civil Procedure[2] section 1021, absent a statute or contract providing otherwise, attorney fees are to be paid by the party hiring the attorney.

## A. Attorney Fees: The American Rule and Its Exceptions

"Under the American rule, as a general proposition each party must pay his own attorney fees. This concept is embodied in section 1021 of the Code of Civil Procedure,[3] which provides that each party is to bear his own attorney fees unless a statute or the agreement of the parties provides otherwise." (*Gray v. Don Miller & Associates*, *Inc.* (1984) 35 Cal.3d 498, 504 (*Gray*).)

Several exceptions to this general rule have been created by the courts and summarized in *Gray,* some of which were later codified. "Three of these

---

[2] All further statutory references are to the Code of Civil Procedure unless otherwise specified.

[3] Section 1021 provides, "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to their costs, as hereinafter provided."

exceptions . . . base recovery of attorney fees to the prevailing party on the fact that the litigation has conferred benefits on others.  Thus, if the litigation has succeeded in creating or preserving a common fund for the benefit of a number of persons, the plaintiff may be awarded attorney fees out of that fund.  [Citation.]  Likewise, if a judgment confers a substantial benefit on a defendant, such as in a corporate derivative action, the defendant may be required to pay the attorney fees incurred by the plaintiff.  [Citation.] Finally, under the 'private attorney general' concept attorney fees may be awarded to those who by litigation secure benefits for a broad class of persons by effectuating a strong public policy.  [Citation.]

"A fourth established exception, sometimes referred to as the 'tort of another' or 'third party tort' exception, allows a plaintiff attorney fees if he is required to employ counsel to prosecute or defend an action against a third party because of the tort of the defendant.  [Citation.]  This rule is embodied in the Restatement of Torts and is generally followed in the United States. [Citation.]

"All these exceptions were created by the courts pursuant to their inherent equitable powers, although statutory authorization for the award of fees has followed in some cases, such as statutes which recognize the 'private attorney general' doctrine." (*Gray, supra,* 35 Cal.3d at p. 505.)[4]

_____

[4] The most well-known of these statutes is section 1021.5, embodying the private attorney general doctrine.  Many other fee statutes that now allow recovery of fees are similarly designed to encourage private enforcement of statutes embodying important public policies and, like section 1021.5, are versions of the private attorney general doctrine.  (E.g., Gov. Code, § 12965, subd. (c)(6) [policy against discrimination in employment and housing]; *id.*, § 9149.35; Lab. Code, § 1102.5, subd. (j) [policy protecting whistleblowers]; Lab. Code, §1194.3 [policy of enforcing wage laws].)  See *Serrano v. Unruh* (1982) 32 Cal.3d 621, 632, 634 (*Serrano*) (§ 1021.5 was based on federal precedent interpreting civil rights fee statutes, citing

**B. The Tort of Another Doctrine**

The tort of another doctrine is a law doctrine of longstanding, derived from English common law dating back to the middle of the 19th Century. (See Annot., *Right to recover as damages attorneys' fees incurred in earlier litigation with a third person because of involvement therein through a tortious act of present adversary* (2026) 45 A.L.R.2d 1183, § 2, citing English cases dating back to 1856; see also *Prentice v. North American Title Guaranty Corp.* (1963) 59 Cal.2d 618, 620 (*Prentice*) [citing early California cases];[5] Restatement of Torts § 914 (1939) [stating rule].

The A.L.R. article states the rule as this: "It appears to be well settled that where the natural and proximate consequence of a tortious act of defendant has been to involve plaintiff in litigation *with a third person*, reasonable compensation for attorneys' fees incurred by plaintiff *in such action* may be recovered as damages against the author of the tortious act." (45 A.L.R.2d 1183, § 2, italics added.) The Restatement of Torts, section 914, similarly provides, "[a] person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action *against a third person* is entitled to recover compensation for the reasonably necessary loss of time, attorney fees and other expenditures *thereby* suffered or incurred." (Rest. Torts § 914, italics added; see also

---

*Prandini v. National Tea Co.* (1978) 585 F.2d 47, 53 [" 'purpose behind most statutory fee authorizations' " is " 'encouragement of attorneys to represent indigent clients and to act as private attorneys general in vindicating congressional policies' "].)

[5] While modern cases trace the origin of the doctrine in California law to *Prentice,* our high court in *Prentice* cited in support of its holding two much earlier cases, such as *Nelson v. Kellogg* (1912) 162 Cal.621 (false arrest) and *Stevens v. Chisholm* (1919) 179 Cal. 557, 564 (malicious prosecution). See also *Neves v. Costa* (1907) 5 Cal.App.111, 119-121 (false imprisonment); *Peebler v. Olds* (1945) 71 Cal.App.2d 382 (malicious prosecution).

Rest.2d Torts, § 914 [similar].)  The doctrine has not been codified in this state, but California cases have applied the common law rule, frequently citing the Restatement.  (E.g., *Prentice, supra*, 59 Cal.2d at p. 621; *Gray, supra*, 35 Cal.3d at p. 505; *Twentieth Century-Fox Film Corp. v. Harbor Ins. Co.* (1978) 85 Cal.App.3d 105, 114.)

The rule in its usual formulation allows recovery of attorney fees and other expenditures incurred where a third-party tortfeasor's conduct requires it to bring or defend an action against a third person.  (See, e.g., *Prentice, supra*, 59 Cal.2d at p. 621 ["where a defendant has wrongfully made it necessary for a plaintiff to sue a third person"]; *Gray, supra,* 35 Cal.3d at p. 508 [rule "has been applied when it has been found that the party seeking attorney fees was required by the wrong of the defendant to protect his interests by bringing or defending an action against a third person"].)

In *Prentice*, our high court addressed whether a vendor of land who, because of the negligence of the escrow holder, was required to protect his interests by filing a quiet title action against the buyer and lender, could recover the attorney fees he expended in doing so from the escrow holder. (*Prentice, supra,* 59 Cal.2d at p. 620.)  Addressing the escrow company's argument that section 1021 precluded such recovery, the court stated that section 1021, which it described as "merely a statement of the general rule," "undoubtedly prohibits the allowance of attorney fees against a defendant in an ordinary two-party lawsuit." (*Prentice,* at pp. 621, 620.)  However, it further stated, "This section is not applicable to cases where a defendant has wrongfully made it necessary for a plaintiff to sue a third person." (*Id.* at p. 621.)

In *Gray*, the plaintiff was a prospective purchaser of real property who relied on his broker's false representation that the seller had accepted his

10

offer. (*Gray, supra,* 35 Cal.3d at pp. 502-503.) The broker, a licensed real estate salesman employed by the defendant brokerage, "falsely notified plaintiff that his offer had been accepted" and later told him the sellers had declined to sell. (*Id.* at p. 507.) As a result, plaintiff filed a suit against the sellers seeking specific performance and against the broker and his firm seeking damages for misrepresentation. Finding the sellers had not accepted the plaintiff's offer, the trial court awarded damages to plaintiff against the broker and brokerage firm, including attorney fees the plaintiff incurred in the action, applying a theory that the broker was a fiduciary, citing *Walters v. Marler* (1978) 83 Cal.App.3d 1 (*Walters*). (*Gray*, at pp. 502-503.) Our high court reversed in part, disapproving *Walters* and rejecting the theory that fiduciary fraud is an exception to the American Rule that parties bear their own attorney fees. (*Id.* at pp. 504-507.)

However, the high court agreed the plaintiff was entitled to recover the attorney fees he incurred in the unsuccessful specific-performance action against the sellers under the tort of another doctrine, reasoning that "[i]f [the broker] had not first falsely notified plaintiff that his offer had been accepted . . . plaintiff would not have incurred attorney fees in seeking to obtain the property in a suit for specific performance against the sellers," and thus the broker's misrepresentation was "the direct cause of plaintiff's action for specific performance against the sellers." (*Gray, supra,* 35 Cal.3d at p. 507.) Those fees therefore qualified as consequential damages under the tort of another doctrine.

### C. In *Gray* and Other Cases, California Courts Have Declined To Extend the Tort of Another Doctrine To Encompass Fees Incurred in Recovering Fees from the Tortfeasor.

Attorney fees recoverable under the tort of another doctrine are not treated as fees qua fees but as consequential tort damages. As our high court

11

explained in *Prentice*, it was "not dealing with 'the measure and mode of compensation of attorneys' but with damages wrongfully caused by defendant's improper actions." (*Prentice, supra,* 59 Cal.2d at p. 621.) Later cases have reaffirmed and clarified this principle.

In *Gray*, the court rejected any recovery of attorney fees in the plaintiff's tort action against the tortfeasor broker itself. It rejected the plaintiff's argument that the fact that the wrongdoer was a fiduciary justified fee shifting, warning, "if the award of attorney fees depended on the nature of the wrong, fees in tort actions would be awarded on a case-by-case basis, a result clearly prohibited by section 1021." (*Gray, supra,* 35 Cal.3d at p. 507.) The court underscored that it had " 'moved cautiously in expanding the nonstatutory bases on which awards of attorney's fees may be predicated,' " declared that it could "discern no justification for departing from the rule stated in section 1021, and decline[d] to open a ' "Pandora's Box" of prolonged litigation' [citation] by upholding the conclusion in *Walters* that a plaintiff is entitled to recover attorney fees as an element of damages in actions for fraud in which the defendant is a fiduciary." (*Ibid.*)

Turning to whether Gray was entitled to recover from the fraudulent salesman the fees Gray incurred pursuing the unsuccessful action against the seller, the court held that he was. (*Gray, supra,* 35 Cal.3d at pp. 507-509.) The court indicated, however, that the tort of another doctrine permits recovery only of the fees the plaintiff incurred pursuing or defending third-party litigation necessitated by the defendant's tortious conduct and *not* the fees spent on the action against the perpetrator of the tort. Specifically, it observed that the trial court had not apportioned fees between those two categories of fees because it had awarded all of the fees under the fiduciary theory articulated in *Walters*, which the court was now rejecting. (*Gray*, at

12

p. 509.)  The *Gray* court reversed the trial court's judgment in part, remanding for a determination of "the proportion of the $7,250 in attorney fees incurred by plaintiff *which is attributable to his action against the sellers*" and directed it to award plaintiff that portion of the fees.  (*Ibid.*, italics added.)  In doing so, it strongly implied that the tort of another doctrine allows recovery as damages of fees incurred suing the third party but does not allow recovery of attorney fees incurred to sue the tortfeasor himself.

*Gray*'s distinction between damages in the form of fees incurred to prosecute or defend an action against a third party and fees incurred to recover those damages has been reinforced in subsequent Court of Appeal decisions.  In *Lewis v. Edmonds* (1987) 190 Cal.App.3d 1101 (*Lewis*), for example, Rufus and Willie Lee Lewis filed a suit seeking cancellation of a promissory note and trust deed as well as damages, injunctive and declaratory relief.  The defendants included a licensed real estate salesman and a notary public whom they alleged had defrauded them into executing the note and trust deed, forged their signatures on other documents and converted the proceeds of the loan.  (*Id*. at pp. 1102-1103, 1104.)  The assignee of the note and trust deed had instituted foreclosure proceedings for nonpayment on the loan.  (*Id*. at p. 1103.)

A demurrer was sustained as to the notary, but a default judgment was entered against the salesman that included principal, interest, punitive damages and the attorney fees the *Lewis* plaintiffs had expended in the suit against him.  (See *Lewis, supra,* 190 Cal.App.3d at p. 1103.)  The salesman was judgment proof and plaintiffs sought to recover from a government account created for compensating victims of fraudulent acts committed by real estate licensees.  (*Id*. at pp. 1102-1103.)

13

The real estate commissioner objected to payment of the attorney fees, which plaintiffs contended they should recover under the tort of another theory, an argument they reprised on appeal. (*Lewis, supra,* 190 Cal.App.3d at p. 1103.) On appeal, this court rejected the plaintiffs' tort of another theory, explaining that the theory allows recovery of fees from a tortfeasor that have been expended when the tort requires the plaintiff to sue or defend an action against a third party. (*Id.* at p. 1104, citing Rest.2d Torts, § 914.) That theory " 'is that the attorney fees incurred *in litigating with the third person* are recoverable as damages, like any other damages, *in the action against the wrongdoer.*' " (*Lewis,* at p. 1104, first italics added, quoting *Austero v. Washington National Ins. Co.* (1982) 132 Cal.App.3d 408, 412, disapproved on other grounds in *Brandt v. Superior Court* (1985) 37 Cal.3d 813, 816-820 & 820, fn. 8.) We noted that the tort of another doctrine "arguably would support a recovery from [the salesman] for the attorney fees incurred in [plaintiffs'] defense of the foreclosure proceeding," but would not support recovery of "fees incurred in the ordinary two-party action" in which plaintiffs had sued the salesman for fraud. (*Lewis,* at p. 1104.) The plaintiffs had failed to present any evidence in the trial court that the fees were incurred defending the foreclosure action rather than suing the salesman tortfeasor. (*Id.* at p. 1104, fn. 3.)[6]

Defendants cite *Third Eye Blind, Inc. v. Near North Entertainment Ins. Servs., LLC* (2005) 127 Cal.App.4th 1311 (*Third Eye Blind*), in which this court again observed the tort of another doctrine allows recovery as damages

---

[6] We also relied on our earlier decision determining that fees are not recoverable under the statute providing reimbursement of real estate fraud victims. (*Lewis, supra,* 190 Cal.App.3d at p. 1104, discussing *Acebo v. Real Estate Education, etc. Fund* (1984) 155 Cal.App.3d 907.)

14

of attorney fees " 'incurred through instituting or defending an action as a direct result of the tort of another' " but distinguished the fees recoverable under that theory "from 'attorney's fees *qua* attorney's fees,' such as those the plaintiff incurs in suing the tortfeasor defendant." (*Id*. at pp. 1324-1325.) The court reversed a trial court's grant of a motion for judgment on the pleadings, holding, among other things, the attorney fees the plaintiff incurred litigating coverage with its insurer were recoverable as damages in its claim against its business manager and insurance broker for failing to advise about a policy exemption and failing to obtain additional coverage. (*Id*. at p. 1314.)

Defendants also cite the recent decision in *David S. Karton, a Law Corp. v. Musick, Peeler & Garret LLP* (2022) 83 Cal.App.5th 1027, from the Second District. That case involved a lengthy set of proceedings, including bankruptcy proceedings in different states between a law corporation and a former client. Eventually, the client prevailed and obtained a substantial judgment against the law corporation, which the client then assigned to another law firm called Musick, Peeler. (*Id*. at pp. 1037-1038.) In the case brought against it by Musick, Peeler, the defendant law corporation argued it still had claims against the former client, which it sought to offset against the judgment, specifically, claims for attorney fees it had incurred in litigation with the former client. The Second District rejected the offset claims because, among other reasons, "the Law Corporation offered no evidence in support of its setoff motion that it brought or defended an action against a third person . . . as a result of any tort [the client] committed against the Law Corporation. Rather, it appears from our record that the Law Corporation commenced an adversary action against [the client] alone with the effect of preventing [him] from obtaining a discharge [in bankruptcy]. The tort of

15

another doctrine does not apply to these facts." (*Id*. at p. 1044; see *id*. at pp. 1045-1046.)

Finally, defendants also point to *Sooy v. Peter* (1990) 220 Cal.App.3d 1305, which stated "the theory" of recovery under the tort of another doctrine "is that the attorney fees are recoverable as damages resulting from a tort in the same way that medical fees would be part of the damages in a personal injury action" and, like *Third Eye Blind*, stated that in such cases "there is no recovery of attorney fees qua attorney fees." (*Sooy,* at p. 1310.)

In addition to these cases, our own research yielded two similar articulations of the limitation. (See *Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 80 ["The tort of another doctrine does not allow a party to recover the fees and costs involved in litigating directly with a negligent defendant"]; *David v. Hermann* (2005) 129 Cal.App.4th 672, 689 ["*Prentice* made clear that Code of Civil Procedure section 1021 'prohibits the allowance of attorney fees against a defendant in an ordinary two-party lawsuit' [citing *Prentice*.] The courts have refrained from expanding the [tort of another] rule in a way that would undermine the general rule that a party bears his own attorney fees"].)

In contrast to these cases indicating that fees for the suit against the tortfeasor himself are not encompassed by the tort of another doctrine, we have found no case, and Guinnane has cited none, that extended the doctrine beyond the fees incurred in prosecuting or defending the action with the third party to those incurred in the action against the tortfeasor.

### D. The Inability To Recover Fees Incurred in Suing the Tortfeasor Does Not Render Guinnane Uniquely Undercompensated.

Throughout its briefs on appeal and in the trial court, Guinnane has argued that if the tort of another doctrine does not encompass fees incurred

suing the tortfeasors themselves Guinnane and plaintiffs in similar cases will not be made whole for the losses resulting from tortious conduct. That is true in the sense that parties who spend fees to litigate against a tortfeasor and have no statutory or contractual basis for fees have their tort recovery offset by the amount they spend on litigation to obtain it, whether counsel is paid hourly or on contingency. We sympathize with the concern, especially in a case like this one that was hard fought and expensive. But, fortunately or unfortunately, this is the product of the common law American Rule codified in section 1021, which as we have discussed requires parties to bear their own attorney fees in most cases,[7] including most tort cases. In this respect, Guinnane's predicament is no different from or worse than that of other plaintiffs who sue and recover damages and other relief for injuries resulting from a tort.

Civil Code section 3333, which governs damages in tort actions, provides that successful tort plaintiffs recover "the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." Despite the section's broad wording, our courts have not construed it to contravene the American Rule in tort cases. In *Woodward v. Bruner* (1951) 104 Cal.App.2d 83, the court held Civil Code section 3333 had to be understood in light of the long-established common law American Rule. (*Woodward,* at pp. 85-86.) The same reasoning has been employed by courts applying the general rule in tort of another cases to deny fees incurred in the litigation against the tortfeasor. (See *Pederson v. Kennedy* (1982) 128 Cal.App.3d 976, 978-979; *Gray, supra,* 35 Cal.3d at pp. 505-506.)

---

[7] The same general rule of course applies as well to contract cases and other kinds of cases where there is no fee agreement or statutory entitlement to fees creating an exception to the rule.

Absent express statutory or contractual exceptions, tort plaintiffs cannot recover attorney fees in litigation against the tortfeasor to recover for the injuries they suffer. Courts have adhered to this rule even where the defendant's conduct caused catastrophic and lifelong injury, and the plaintiff's suffering was profound. (See *Salgado v. County of Los Angeles* (1998) 19 Cal.4th 629, 651 [plaintiff permanently injured at birth during difficult delivery in which physicians fractured his left arm and damaged the nerves in his other arm, leaving him with permanent disability, loss of strength, abnormal positioning of the arm, and lifelong need for therapy; Supreme Court reversed trial court award of plaintiff's attorney fees holding "ordinary rule, that each party bears the cost of its own attorney fees, must prevail"]; see also *Seffert v. Los Angeles Transit Lines* (1961) 56 Cal.2d 498, 501, 504, 511, 513-514 [plaintiff suffered permanent disability and enduring pain after she was injured attempting to board bus, when doors closed on her hand and foot and dragged her, disfiguring foot, fracturing heel and shin bones and severing arteries and nerves; majority affirmed verdict, with Justice Traynor dissenting on ground that pain and suffering award was excessive, observing in passing that such damages may incidentally help "pay for attorney fees for which plaintiffs are not otherwise compensated"].) As these cases reflect, attorney fees are not compensated in tort actions, no matter how great the injury suffered or whether their recovery fails to make them whole.

Guinnane attempts to distinguish other tort cases, arguing that the tort of another doctrine is grounded in equitable principles and should be applied on a case-by-case basis to allow recovery of fees incurred to recover those fees. If plaintiffs like those in *Salgado* and *Seffert*, whose injuries were catastrophic and life altering, are required to bear the cost of the attorney

fees they incur to recover from the tortfeasor who injured them, it is difficult to see why someone injured by the interference with his contract in a real-estate transaction should be treated more favorably. In any event, as we have discussed, the case law, beginning with *Gray* and including several subsequent cases, has consistently declined to allow plaintiffs to recover from the tortfeasor the attorney fees incurred in the action against that tortfeasor to recover the tort of another damages incurred in a third-party litigation.

Equally unavailing are Guinnane's arguments about the expense of attorney fees undercutting the value of his recovery. While such arguments are not without force, as just discussed, they apply to victims of torts generally, and the applicability of the American Rule to tort cases is settled law. Any policy decision to address the issue is one for the Legislature, which is better positioned to weigh the competing considerations and enact such a change if it deems that appropriate.

### E. The Private Attorney General Doctrine Is Distinct From, and Does Not Support Extension of, the Tort of Another Doctrine.

Finally, Guinnane argues by analogy that the private attorney general doctrine, as enacted in section 1021.5 and other similar fee statutes, has been interpreted to permit recovery of fees incurred in litigating entitlement to attorney fees, reasoning that awarding "fees on fees" furthers the purpose underlying the statute allowing recovery of attorney fees. Guinnane contends that fees incurred litigating fee entitlement should be recoverable under the tort of another doctrine by analogy to the private attorney general doctrine, where "fees on fees" are allowed to prevent dilution of a fee award. It contends that both doctrines operate as equitable exceptions to section 1021 and serve similar policy goals of encouraging meritorious litigation and deterring recalcitrant conduct by well-resourced defendants. According to Guinnane, denying recovery here would undermine those purposes by

19

discouraging plaintiffs from pursuing tort claims and allowing defendants to erode fee awards through prolonged litigation. These arguments overlook significant differences between the private attorney general doctrine and the tort of another doctrine.

Our high court has indicated that the private attorney general theory stands on its own as a mechanism to encourage the enforcement of important public policies. In *Serrano, supra*, 32 Cal.3d at page 632, the court stated, "The private-attorney-general theory rests on the policy of encouraging private actions to vindicate important rights affecting the public interest, without regard to material gain. [Citation.] A central function is 'to call public officials to account and to insist that they enforce the law . . . .' [Citation.] Implicit is the recognition that 'without some mechanism authorizing the award of attorney fees, private actions to enforce . . . important public policies will as a practical matter frequently be infeasible.' [Citation.] [¶] Thus the doctrine will often be frustrated, sometimes nullified, if awards are diluted or dissipated by lengthy, uncompensated proceedings to fix or defend a rightful fee claim." (Fn. omitted.)

The court further explained that "[w]e should not distort our rule by restricting it to (1) persons with means sufficient to finance lawsuits without the assistance of court-awarded fees, and (2) indigents who qualify for legal aid. The showing required under section 1021.5[8] is substantial." (*Serrano*,

_____

8 Section 1021.5 provides in relevant part, "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an *important right affecting the public interest* if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect

20

*supra*, 32 Cal.3d at p. 634.)  Absent compensation for time reasonably spent establishing and defending a fee award, such litigation would frequently be impracticable, and important statutory and constitutional rights would go unenforced.  (See *ibid*.)  The court held that " '[t]he "private attorney general" theory must be accepted or rejected on its own merits—i.e., as a theory rewarding the effectuation of significant policy—rather than as a policy-oriented extension of the "substantial benefit" theory burdened with the limitations of that rationale.' "  (*Id*. at pp. 631-632.)

The tort of another doctrine and the private attorney general doctrine rest on fundamentally different rationales, and those differences indicate why "fees on fees" are recoverable under the latter doctrine but not the former. Under the tort of another doctrine, attorney fees are awarded solely as an element of compensatory damages to compensate the plaintiff for having been forced, by the defendant's tort, to litigate against a third party.  (E.g., *Prentice, supra*, 59 Cal.2d at p. 621.)  The doctrine is remedial, not policy-driven; it neither seeks to encourage litigation that serves some public interest nor to incentivize private enforcement of statutory or constitutional rights.  It allows fees incurred in a third-party action to be recovered as damages when they comprise part of the economic injury caused by a tort.  In short, Guinnane's attempt to analogize the tort of another theory to private-attorney-general fee-shifting statutes is not persuasive.

_____

to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor, unless one or more successful parties and one or more opposing parties are public entities, in which case no claim shall be required to be filed therefor under Part 3 (commencing with Section 900) of Division 3.6 of Title 1 of the Government Code."  (Italics added.)

21

## II.

### *The Asserted Error of the Trial Court in Relying on the Court's Motion in Limine Ruling.*

Guinnane also argues that the trial court erred by relying on Judge Lee's earlier motion in limine ruling in denying fees because such rulings are interim, nonfinal, and do not preclude posttrial motions for attorney fees. It contends that the motion in limine addressed only the admissibility of fee evidence at trial, not the recoverability of fees through a postjudgment motion, particularly where the case ultimately proceeded as a bench trial.

We need not reach this issue. Any procedural error would necessarily be harmless because of our holding that Guinnane is not entitled to recover attorney fees incurred in its two-party action against the defendants.

### *A Closing Observation*

Guinnane points out in its brief that defendants "made litigating this action costly," and the prior appeal from the meritless anti-SLAPP motion, not to mention the amount of attorney fees Guinnane expended, are some indication that this may be somewhat accurate. As we have said, we are sympathetic. There are some remedies for meritless actions, such as sanction awards for bad faith or frivolous litigation actions or delay tactics and misuse of the discovery process. (§§ 128.5, 2023.030.) But the bar for those remedies is high. Whether a case can be made to the Legislature to revisit the longstanding American Rule in the tort of another context or in tort litigation more generally is not clear. Regardless, this court is not at liberty to depart from current law.

**DISPOSITION**

The superior court's posttrial order dated January 29, 2025, denying Guinnane's motion for attorney fees incurred in this action is affirmed. Each party shall bear its own costs.

STEWART, P. J.


We concur.


RICHMAN, J.


DESAUTELS, J.


*Guinnane Construction Co. v. Chess et al.* (A172999)

Trial Court:  Alameda County Superior Court

Trial Judge:  Hon. Victoria Kolakowski

Counsel:

Arnold & Porter Kaye Scholer, Jonathan W. Hughes and Andrew S. Hannemann, for Plaintiff and Appellant.

Shartsis Friese, Robert Charles Ward and Roey Z. Rahmil, for Defendants and Respondents.